IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JOHN L. SALGADO,

        Plaintiff,

    v.

RITE AID CORPORATION,

        Defendants.

HON. JEROME B. SIMANDLE

Civil Action
No. 05cv1544 (JBS)

**OPINION**

APPEARANCES:

John L. Salgado
2716 Hayes Avenue
Camden, NJ 08105
    Plaintiff Pro Se

James A. Rothschild, Esq.
Michael J. Carlson, Esq.
ANDERSON, COE & KING, LLP
201 North Charles Street, Suite 2000
Baltimore, MD 21201
    Attorneys for Defendant Rite Aid Corporation

Paul J. Russoniello, Esq.
FLASTER/GREENBERG P.C.
1810 Chapel Avenue West
Cherry Hill, NJ 08002
    Local Counsel for Defendant Rite Aid Corporation

**SIMANDLE**, District Judge:

    This matter comes before this Court upon the unopposed motion of Defendant Rite Aid Corporation ("Rite Aid") for summary judgment pursuant to Fed. R. Civ. P. 56(c). Plaintiff John Salgado ("Plaintiff" or "Mr. Salgado") alleges that Rite Aid discriminated against him based on his national origin and/or

race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). For the following reasons, Defendant's motion for summary judgment will be granted.

## I.    BACKGROUND

Mr. Salgado, acting pro se, filed a complaint with this Court on March 21, 2005. (Complaint at 1.) Plaintiff's complaint, liberally construed, asserts three claims under Title VII: (1) hostile work environment, (2) discriminatory discharge, and (3) retaliation. (Id. at 3.) Attached to the complaint, Plaintiff submitted the Final Order of the Director of the Division on Civil Rights of the State of New Jersey, which closed Plaintiff's case with a finding of No Probable Cause on February 16, 2005. (Id. at 8.) Noticeably lacking from Plaintiff's complaint is a Notice of Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC").[1]

On November 24, 2002, Rite Aid hired Mr. Salgado as a security officer at its Broadway store in Camden, New Jersey.

---

[1] It is not clear whether Plaintiff filed charges with the EEOC. However, failure to exhaust administrative remedies under Title VII is not a jurisdictional bar. Robinson v. Dalton, 107 F.3d 1018, 1021-22 (3d Cir. 1997) (holding that district court should have dismissed a Title VII claim for failure to exhaust administrative remedies under Fed. R. Civ. P. 12(b)(6) (failure to state a claim) rather than under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction)). See also Waiters v. Parsons, II, 729 F.2d 233, 236-37 (3d Cir. 1984) (holding that district court erred by dismissing for lack of subject matter jurisdiction a Title VII claim in which plaintiff failed to file with the EEOC prior to bringing suit).

2

(Statement of Material Facts at 1.)  After training Mr. Salgado at the Broadway store for a couple of months, Rite Aid transferred him to its Federal Street store in Camden.  (Id. at 1-2.)

Mr. Salgado complained about several incidents that occurred while working at the Federal Street store.  Felicia Ledbetter, an assistant manager, asked Mr. Salgado to watch a customer while he already had another customer under surveillance, indicating that he was not doing his job.  (Id. at 2.)  However, Mr. Salgado was not sure if this was harassment.  Mr. Salgado also claims that Ms. Ledbetter complained to his security supervisor, Lisa Turney, but Ms. Turney never had a problem with Mr. Salgado's job performance.  (Id.)  Additionally, Ms. Ledbetter occasionally asked Mr. Salgado to do tasks that he did not consider part of his job as a security officer.  (Id.)  Mr. Salgado, however, did not mind doing them because she asked him politely when there were no customers in the store.  (Id.)

In April of 2003, Ms. Ledbetter was speaking with Mr. Salgado and Natasha Casanovas, another Hispanic employee.  They were exchanging jokes about Mayor Milan, the mayor of Camden.  (Id. at 2-3.)  During this conversation, Ms. Ledbetter made the comment that "you Puerto Ricans think you're better than us . . . you think your Puerto Rican rice and beans are better." (Id. at 3.)  Mr. Salgado and Ms. Casanovas responded that these comments

3

were offensive. (Id.) Then, after Ms. Casanovas walked away, Ms. Ledbetter asked Mr. Salgado why he was working there while collecting Social Security disability benefits, and said that he was greedy for both working and collecting benefits. (Id.)

Although Charisse Brown, the store manager, was not working the day of the allegedly offensive comments, she did come into the store that day and Mr. Salgado complained to her about the comments. (Id.) Ms. Brown allowed Mr. Salgado to use the phone in the store manager's office to call his security supervisor, Lisa Turney. (Id.) Mr. Salgado left Ms. Turney a voicemail. (Id.) Ms. Brown also called Ms. Ledbetter into the office. (Id.)

The next day, Ms. Turney came into the store and spoke with Mr. Salgado. (Id.) Ms. Turney then spoke to Ms. Brown and Ms. Ledbetter. (Id.) Afterwards, Ms. Turney spoke to Mr. Salgado again, and told him that the problem was resolved and that if it happened again, he should contact her. (Id. at 4.)

Two days later, Mr. Salgado attended a security officer training class and took a certification test conducted in part by Ms. Turney at the Rite Aid store in Vineland. (Id.) Ms. Brown had informed Mr. Salgado that he had to take this test a week beforehand. (Deposition Transcript of John L. Salgado at 57.) After the class completed the certification tests, Ms. Turney congratulated the entire class for passing the test. (Statement

of Material Facts at 4.)  After returning to the Federal Street store upon completing the test, Mr. Salgado did not see Ms. Ledbetter again.  (<u>Id.</u> at 4.)

Rite Aid policy required test-takers to answer at least sixty percent of the questions correctly on each of the ten sections of the test.  (<u>Id.</u>)  Mr. Salgado knew that the class and successful passage of the certification test were required for security officers.  (<u>Id.</u>)  However, Mr. Salgado failed four of ten sections of the test.  (<u>Id.</u>)

A week after the test, Ms. Turney met with Mr. Salgado at the Federal Street store.  (<u>Id.</u> at 5.)  Ms. Turney told Mr. Salgado that he was being terminated because he had failed the certification test.  (<u>Id.</u>)  Ms. Turney stated that she had waited before terminating Mr. Salgado because she never had a security officer fail the test before and she wanted to confirm with her supervisors that Mr. Salgado should be terminated.  (<u>Id.</u>)  In any event, Mr. Salgado did not think that Ms. Turney did anything discriminatory.  (<u>Id.</u>)  Mr. Salgado believed that only Ms. Ledbetter acted in a discriminatory manner.  (<u>Id.</u>)  Rite Aid replaced Mr. Salgado with another Hispanic security guard.  (<u>Id.</u>)

## II.  **DISCUSSION**

Defendant argues that summary judgment is appropriate because Plaintiff's version of the facts, even if true, do not support an actionable claim under Title VII.  (Defendant's

Summary Judgment Brief at 5, 7.) Plaintiff did not oppose Defendant's summary judgment motion. For the following reasons, Defendant's motion for summary judgment will be granted.

**1. Summary Judgment Standard**

On a motion for summary judgment, the court must determine that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999)(citing Fed. R. Civ. P. 56(c)). In applying this standard, courts must view the evidence in favor of the nonmoving party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

The moving party bears the initial burden of showing no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, where, as here, the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Additionally, where, as here, the nonmoving party fails to oppose the motion with evidence such as written objection,

memorandum, or affidavits, the court "will accept as true all material facts set forth by the moving party with appropriate record support." Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990)(quoting Jaroma v. Massey, 873 F.2d 17, 21 (1st Cir. 1989)). If the nonmoving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate," and only if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); see Anchorage Assocs., 922 F.2d at 175.

2. **Analysis**

Defendant is entitled to summary judgment because it discharged its burden by showing that there is an absence of evidence to support Plaintiff's case. Plaintiff's complaint, liberally read, alleges three claims under Title VII: (1) hostile work environment, and (2) discriminatory discharge, and (3) retaliation.

a. **Hostile Work Environment**

Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim. A hostile work environment under Title VII[2] requires plaintiff to demonstrate that: (1)

---

[2] Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

7

defendant's conduct was severe and pervasive, (2) a reasonable person would find defendant's conduct hostile, and (3) the victim subjectively found defendant's conduct hostile. <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17 (1993); <u>see also</u> <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 425-26 (3d Cir. 2001) (articulating standard for hostile work environment for sexual harassment).

Plaintiff offers scant evidence of a hostile work environment. He principally relies on the allegedly offensive comments made by Ms. Ledbetter about Puerto Ricans thinking they are superior. This in itself does not rise to the level of an ethnic slur, let alone a racially motivated statement. Shortly thereafter, Ms. Ledbetter told Plaintiff that he was greedy for both working and collecting disability benefits. It is, of course, generally illegal to collect disability benefits while working. Moreover, the Rite Aid store manager and Plaintiff's security supervisor both reacted promptly to his complaints about the allegedly offensive comments. These isolated comments are not severe or pervasive, and no reasonable jury could conclude that they were.

Previously, Ms. Ledbetter had asked Plaintiff to watch a customer while Plaintiff already had a customer under surveillance. However, Plaintiff is not sure if this was harassment or discriminatory. Also, Ms. Ledbetter occasionally asked Plaintiff to complete certain tasks that he did not

8

consider part of his job as security officer. However, Plaintiff did not mind doing them because she asked politely.

Plaintiff offers no evidence that this other conduct was motivated by the fact that Plaintiff was Puerto Rican or because of Plaintiff's race. Additionally, Plaintiff himself did not subjectively find this other conduct discriminatory.

Even assuming these facts are true, they do not rise to the level of a hostile work environment under Title VII. This Court finds that no reasonable jury could find the isolated comments sufficiently severe or pervasive. Moreover, Plaintiff did not find the other incidents discriminatory, and neither could a reasonable jury. Thus, there is no genuine issue of material fact as to the hostile work environment claim and Defendant is entitled to summary judgment.

### b.   Discriminatory Discharge

Defendant is also entitled to summary judgment on Plaintiff's discriminatory discharge claim. Because Plaintiff has not offered direct evidence of discrimination, his discriminatory discharge claim must proceed under the McDonnell Douglas[3]/Burdine[4] burden-shifting framework. See, e.g., Sheridan v. E.I. Dupont de Nemours and Co., 100 F.3d 1061, 1065-66 (3d

---

[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[4] Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).

Cir. 1996).  A prima facie discriminatory discharge claim under Title VII requires plaintiff to show: (1) he is a member of a protected class, (2) he was qualified for the position, (3) he was discharged, and (4) the position was ultimately filled by a person not of the protected class.  Id. at 1066.  Then, the burden of production shifts to defendant to articulate a legitimate, non-discriminatory reason for the discharge.  Id.  The burden then shifts back to the plaintiff to demonstrate that defendant's proferred reason is pretext.  Id.

Here, Plaintiff fails to establish his prima facie case.  Plaintiff fails to satisfy the second element because he was unqualified for the position and was discharged for failing the certification exam.  Additionally, Plaintiff fails to establish the fourth element because Defendant replaced Plaintiff with another Hispanic security guard.

Even if we assume Plaintiff established his prima facie case, Plaintiff cannot prevail on this motion.  Defendant offered a legitimate, non-discriminatory reason for discharging Plaintiff: Ms. Turney discharged him for failing the security officer exam.  Plaintiff has not offered any evidence to show that this reason was pretext.  Moreover, Plaintiff himself does not think that Ms. Turney did anything discriminatory.

However, there may be an attenuated inference of pretext.  Prior to the test, Plaintiff had complained about the allegedly

10

offensive comments to Ms. Turney.  After the test, Ms. Turney congratulated the entire class, including Plaintiff, for passing the certification exam.  Defendants claim, however, that it discharged Plaintiff because he failed this test.  Nevertheless, Defendant submitted actual copies of Plaintiff's certification tests with its summary judgment brief, (Deposition Transcript of John L. Salgado, Deposition 4A-4J), and Plaintiff has not offered any evidence that these were fabricated or that the scoring was incorrect.  Because Plaintiff failed to oppose the summary judgment motion, this Court "will accept as true all material facts set forth by the moving part with appropriate record support."  Anchorage Assocs., 922 F.2d at 175.

Thus, there is no genuine issue of material fact as to the discriminatory discharge claim and Defendant is entitled to summary judgment.

    **c.**    **Retaliation**

Defendant is entitled to summary judgment on Plaintiff's retaliation claim.  A prima facie discriminatory retaliation claim under Title VII[b] requires that: (1) plaintiff engaged in

---

[b] Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

11

Title VII protected activity, (2) defendant took an adverse employment action against plaintiff, and (3) there was a causal connection between the protected activity and the adverse employment action. <u>Nelson v. Upsala College</u>, 51 F.3d 383, 386 (3d Cir. 1995). Once plaintiff establishes this prima facie case, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for the employment action. <u>Moore v. Philadelphia</u>, 461 F.3d 331, 342 (3d Cir. 2006) (internal citations omitted). Then, the burden shifts back to plaintiff to persuade the factfinder that defendant's proffered reason was pretext. <u>Id.</u> Thus, to defeat defendant's motion for summary judgment, plaintiff must produce evidence that a reasonable jury could use to reach this conclusion. <u>Id.</u>

Plaintiff may have engaged in Title VII protected activity by reporting the allegedly offensive comments to Ms. Brown, the Rite Aid store manager, and Ms. Turney, his security supervisor. Defendant took an adverse employment action against Plaintiff by discharging him. Besides the temporal proximity of these two events, Plaintiff fails to offer any evidence of a causal relationship between them. Even the temporal proximity between the two events is insufficient. Although Plaintiff took the certification exam two days after he reported the comments to his supervisors, Plaintiff knew he was scheduled to take this exam

even before Ms. Ledbetter made the allegedly offensive comments.

Even if we assume that Plaintiff satisfied his prima facie burden, Plaintiff cannot prevail on this motion. Defendant has offered a legitimate, non-discriminatory reason for discharging Plaintiff: he failed the certification exam. The same pretext analysis from the discriminatory discharge claim, supra, applies to the retaliation claim. He was demonstrably not competent to perform the job, and retaliation played no role in his discharge.

Thus, because there is no genuine issue of material fact as to the retaliation claim, Defendant is entitled to summary judgment.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted.

December 6, 2006
Date

Jerome B. Simandle
JEROME B. SIMANDLE
U.S. District Judge